Roger W. Bailey
Joshua J. Busey
BAILEY & BUSEY PLLC
411 N. 2nd Street
Yakima, Washington 98901

Phone:          509.248.4282
Facsimile:      509.575.5661
E-Mail:         roger.bailey.attorney@gmail.com
                Joshua.busey.attorney@gmail.com

*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE:<br><br>TATOES, LLC<br>WAHLUKE PRODUCE, INC.<br>COLUMBIA MANUFACTURING, INC., d/b/a/ COLUMBIA ONION,<br><br>       Debtors. | Case No.   16-00900<br>Case No.   16-00899<br>Case No.   16-00898<br><br>MOTION FOR AN ORDER:<br>(a) Authorizing Emergency & Interim Use of Cash Collateral;<br>(b) Authorizing Final Use of Cash Collateral;<br><br>***WITH REQUEST TO SHORTEN TIME FOR NOTICE AND OBJECTIONS & REQUEST FOR EMERGENCY HEARING*** |

BAILEY B BUSEY

411 North 2ND St.
Yakima, Washington, 98901
(509) 248-4282

**MOTION FOR USE OF
CASH COLLATERAL**                    -1-

Tatoes, LLC (**"Tatoes"**), Wahluke Produce, Inc. (**"Wahluke"**) and Columbia Manufacturing, Inc. d/b/a Columbia Onion (**"Columbia"**) and collectively the **"Debtors"** or **"Companies"** hereby move the Court for an order authorizing the Debtors to use cash **collateral** upon the terms and conditions described herein. The motion is made pursuant to 11 U.S.C. §363, FRBP 4001 and LBR 4001-1 and is supported by the Declaration of Del Christensen. Any reference to an Exhibit herein is referring to the Exhibits attached to the Declaration of Mr. Christensen.

## 1.    Background:

1.1    Tatoes is a Washington limited liability company owned by Del & Daneen Christensen (**"Christensen"**). Tatoes farms approximately 3,000 acres of potatoes, onions and wheat pursuant to a number of ground leases with both affiliated and non-affiliated companies.  Tatoes primarily farms ground located in Grant County, Washington.   Tatoes currently employs approximately 30 people on a full time basis.  During the farming season, additional employees are retained to assist with the growing and harvesting of the crops.



1.2 Wahluke Produce, Inc., is a Washington corporation owned by Del & Daneen Christensen. Wahluke is a packer and shipper of fresh potatoes which is located in Mattawa, Washington. Wahluke primarily, although not exclusively, packs and ships potatoes grown by Tatoes. Wahluke employs approximately 44 people on a full time basis. Additional employees are brought in from time to time depending upon the quantities that are being packed.

1.3 Columbia Manufacturing, Inc. d/b/a Columbia Onion is a Washington corporation owned by Del & Daneen Christensen. Columbia is a packer and shipper of fresh onions which is located in Mattawa, Washington. Columbia, primarily, although not exclusively, packs and ships onions grown by Tatoes. Columbia employs approximately 41 people during the packing season. Columbia typically finishes packing in late April or May and then lays off the majority of its employees until the new crop is harvested.

1.4 Wahluke and Columbia have entered into an exclusive sales and marketing contract (**"Marketing Contract"**) with Eagle Eye Produce, Inc. (**"Eagle Eye"**). Under the Marketing Contract, Wahluke and Columbia are



**MOTION FOR USE OF**
**CASH COLLATERAL**                    -3-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

required to sell all of their onions and potatoes through Eagle Eye.[1]  Under the Marketing Agreement Eagle Eye acts as a commission merchant and in exchange receives a commission equal to five percent (5%) of the gross F.O.B. sales price for products sold.[2]

1.5    Del Christensen serves as the managing member and/or CEO of the Debtors.   Daneen Christensen serves as the office, payroll and human resources manager of the Debtors.   Del & Daneen have three sons who are involved in the management and operation of the Debtors.  Dean Christensen is in charge of financial reporting for the Debtors.   Alex Christensen is a project manager for the Debtors.   Dallon Christensen serves as the farm manager for Tatoes.

1.6    Rabo AgriFinance (**"RAF"**) is the primary secured lender to the Debtors.   The relationship between RAF and the Debtors began in July, 2014.  The Debtor's obligations to RAF consist of a revolving operating line, term loan and a special purpose loan made for purposes of developing a company

---

[1] There are certain exceptions under which Wahluke and Columbia continue to sell their own product to a limited number of customers who pre-dated the Eagle Eye/Wahluke relationship.
[2] The amount of the commission is reduced on direct sales by Wahluke and Columbia.

BAILEY BB BUSEY
411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**MOTION FOR USE OF
CASH COLLATERAL**                    -4-

called EZ Fixings, LLC[3]. The combined sum of the obligations owed to RAF is approximately $22,000,000 as of the date of filing.

1.7 RAF's loans are cross collateralized and secured by substantially all of the assets of the Debtors, including crops, farm products, inventory, accounts receivable and equipment. In addition, RAF's collateral includes assets of a number of non-Debtor affiliated companies (**"Affiliates"**).[4] The most significant of the Affiliates are: (a) DAC Properties, LLC, which owns a significant amount of the real property on which the Debtors operate; (b) U12B253, LLC which owns real property on which the Debtors operate; (c) Saddle Mountain Wireless, LLC which is an internet service provider in Grant County; (d) Terra Management, LLC which owns real estate upon which the Debtors operate as well as providing certain management services to the Debtors; and (e) EZ Fixings, LLC which is a defunct company established for the purpose of developing and selling certain fresh market potato & onion products.

---

[3] The Debtors are also party to a swap agreement which was entered into in order to hedge against interest rate risk on the Debtor's term loan.

[4] The term Affiliates is not used in the way that it is defined in the Bankruptcy Code but simply as a term denoting that there is some relationship between the owners of the companies and Debtors.



**MOTION FOR USE OF
CASH COLLATERAL**

-5-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

1.8    RAF's operating loan was fully due and payable on March 1, 2016. RAF has sent the Debtors notice that the operating loan is in default and have made demand upon the Debtors to turn over all collateral securing RAF's operating loans to the Debtors.    RAF has also declared the term loan and EZ Fixings loans to be in default pursuant to cross-default provisions contained in RAF's loan documents.

1.9    In addition to secured obligations to RAF, the Debtors have a variety of trade debts.    The total of these trade debts is approximately $5,360,00.00.    The largest part of the trade debt is made up of obligations owed by Tatoes, LLC to two fertilizer/chemical companies, Saddle Mountain Supply Company (approx.. $1,700,000) and Windflow Fertilizer (approx.. $2,500,000).    Approximately $1.25 million of the trade debt has been incurred in preparing and fumigating properties Tatoes intends to farm in 2016.[5] Saddle Mountain Supply Company and Windflow Fertilizer have both filed crop liens pursuant to terms of RCW 60.11 with respect to their 2016 crop inputs.

---

[5] This work was done in September – December, 2016 with the consent and approval of RAF.



BAILEY BB BUSEY

411 North 2nd St.
**MOTION FOR USE OF**
Yakima, Washington, 98901
**CASH COLLATERAL**         **-6-**
(509) 248-4282

1.10    As of March 1, 2016 Tatoes had approximately 25,862 tons of the 2015 potato crop and 8,800 tons of the 2015 onion crop in storage (**"2015 Crops"**).    While no one can predict the price that will be received for these crops, the Debtors currently estimate the net value of the remaining 2015 Crops in storage is approximately $3,522,000.    The Debtors calculations in this regard are attached to the Declaration of Del Christensen as <u>Exhibit 8</u>.    As indicated above, the Debtors also have an investment in the 2016 crops of approximately $1.25 million, constituting the cost of the chemicals, fertilizer and supplies which have been incurred in preparing the Debtors owned and leased properties for production of 2016 crops.

1.11    In addition to the Debtors' crops, the Debtors currently have approximately $4,250,000 in cash, accounts receivable and checks which are due to the Debtors.    The primary source of the receivables are payments due from Eagle Eye pursuant to the Marketing Agreement.    Of the amounts owed from Eagle Eye, approximately $1,275,000 is owed to Wahluke and $2,100,000 million is owed to Columbia.    The Debtors in turn owe Eagle Eye approximately $300,000 for reimbursement of packaging and sales expenses due under the Marketing Agreement.



1.12   During the past several months RAF has indicated to the Debtors that it will not advance the Debtors any additional funds for purposes of allowing the Debtors to conduct 2016 farming operations.  RAF has continued to advance funds to the Debtors for purposes of allowing the Debtors to store, pack and sell the 2015 Crops.

1.13   The Debtors efforts to negotiate a restructuring of its obligations with RAF have, to date, proven unsuccessful, with the result that the Debtors have been forced to file these chapter 11 proceedings.  The purpose of these chapter 11 proceedings is to: (a) allow the Debtors to conduct farming operations in 2016 and subsequent years; (b) to restructure the Debtors' obligations to RAF to provide payment terms that are more realistic given the nature and extent of RAF's collateral; and (c) allow the Debtors to pay their trade and other unsecured creditors back over time through operations.  While the Debtors may propose to liquidate certain assets in order to improve efficiencies or reduce costs, the Debtors do not see this as a liquidation bankruptcy.

1.14   The Debtors are seeking to use cash collateral, consisting of proceeds from the 2015 Crops (whether in the form of cash, accounts



411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

MOTION FOR USE OF
CASH COLLATERAL                    -8-

receivable, inventory or crops) as well as proceeds from the 2016 Crops in order to fund their integrated farming, storage, packing and sales operations.

## 2. Identification of Cash Collateral & Lienholders:

2.1     All of the proceeds of the 2015 Crops are encumbered by security interests and liens in favor of RAF.  Other than the liens in favor of RAF, the Debtors do not believe any other party claims a security interest or lien in the 2015 Crops.

2.2     The 2016 Crops are currently encumbered by crop liens in favor of Saddle Mountain Supply Company and Windflow Fertilizer for the fertilizer, chemicals and supplies that have been provided in order to prepare land for the Debtor's 2016 farming operations.     One of the Debtor's landlords, Anderson Farms, Inc. has filed two liens against Tatoes, LLC's 2016 crops in order to secure the payment of rent.  The parties who have filed crop liens against the Debtors related to 2016 crop inputs are referred to as the **"2016 Lienholders."**

2.3     The Debtors do not believe that any significant amount of RAF's collateral has been invested in the 2016 Crops as of the date of filing.  As a result it is arguable whether RAF currently has a security interest in the 2016



**MOTION FOR USE OF**
**CASH COLLATERAL**                    -9-

BAILEY BB BUSEY
411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

16-00900-FPC11     Doc 6     Filed 03/21/16     Entered 03/21/16 17:18:39     Pg 9 of 29

Crops, however, because the Debtors propose to use cash collateral in which RAF has as security interest, the Debtors are proposing to grant RAF a replacement lien in the 2016 Crops, as discussed below.

**3.      Assets of the Debtors/Collateral for RAF Loans.**

3.1      In addition to the 2015 and 2016 Crops, RAF's loans are collateralized by a significant amount of real and personal property owned primarily by non-Debtors that are affiliated with the Debtors.   The chart following ¶3.5 is a summary of the assets which collateralize the RAF Loans. The majority of the real estate valuations are taken from appraisals commissioned by RAF in 2014 and 2015.  Based upon the current agricultural real estate market, the Debtors believe that current farm ground prices in the area where the Debtors operate are approximately $15,000 - $18,000/acre whereas the appraised values several years ago were closer to the $10,000 - $12,000/acre range.   The chart below uses the values from the RAF appraisals rather than what the Debtors believe to be the current fair market values, with two exceptions: (a) the property described as "Property 2" includes an appraisal of Del & Daneen Christensen's personal residence.   The appraisal values the residence at $350,000.  The Debtors believe this value is so far out



**MOTION FOR USE OF**
**CASH COLLATERAL**                    **-10-**

BAILEY BUSEY
411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

16-00900-FPC11     Doc 6     Filed 03/21/16     Entered 03/21/16 17:18:39     Pg 10 of 29

of line with the cost and value of the residence that it lacks credibility. The Debtors have increased the value of the residence to $750,000, which is still conservative; and (b) the value of the property described as "Property 5" is significantly flawed because the value does not include any value for approximately 86 acres of land that is included with those parcels which is not under circle irrigation. The Debtors have added back the missed acreage at a value of $12,000/acre value, which the Debtors believe is too low.

3.2    The Debtors made one further adjustment to the real estate values because two of the real property appraisals commissioned by RAF included a portion of the Debtor's onion packing facility. As a result the value of the real property assets has been reduced by $1.8 million, which the Debtors believe represents a reasonable approximation of the land that was included in both appraisals.

3.3    The value of the packing and storage equipment is taken from an appraisal commissioned by RAF in 2014.

3.4    The value of the remaining properties and assets which are not based upon appraisals are simply estimates based upon my knowledge of the assets. The Companies own a significant amount of farm and other equipment



which collateralizes the RAF loans. The Debtors have valued this equipment at $1,000,000. In addition, RAF has a security interest in substantially all of the assets of Saddle Mountain Wireless which the Debtors estimate the value of that business at $1.5 million based upon the cash flows that it generates.

3.5    The Property described in the chart below as Farm B is encumbered by a first position mortgage in favor of Farm Credit Services. The Farm Credit mortgage secures a debt of Robert & JoAnne Christensen in the face amount of $3.8 million (which has been paid down somewhat). The Farm Credit debt is being paid by a non-Debtor company called Windflow Fertilizer and is not currently in default. In addition to Farm B, the Farm Credit debt is secured by substantial additional collateral owned by non-debtor entities. Using RAF's appraised value of $12,000/acre, the additional collateral for the Farm Credit loan is likely valued at $10.0 million.

BAILEY BB BUSEY

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**Property Schedule**

RABO Internal Appraisal
Dated: 7/15/2015

| Property | Property Owner | Parcel Number | Gross Acres | Rabo Valuation |
|---|---|---|---|---|
| Farm A | DAC, LLC | 191557000 | 66.3 | $ 3,208,500.00 |
| | | | | |
| Farm B | DAC, LLC | 211561000 | 40.5 | |
| | DAC, LLC | 211562000 | 80.8 | |
| | DAC, LLC | 211564000 | 20.2 | |
| | DAC, LLC | 211563000 | 20.2 | $ 2,254,700.00 |
| | DAC, LLC | | | |
| | | | | |
| Farm C | DAC, LLC | 190145000 | 157.3 | $ 1,858,750.00 |
| | | | | |
| Farm D | DAC, LLC | 210642000 | 80.5 | |
| | DAC, LLC | 210643000 | 80.4 | $ 2,175,000.00 |
| | | | | |
| Farm E | DAC, LLC | 210234000 | 37.7 | |
| | DAC, LLC | 210233000 | 48.2 | |
| | DAC, LLC | 210238000 | 46.1 | |
| | DAC, LLC | 312369000 | 105.94 | |
| | Terra Management | 210235000 | 53.3 | $ 3,503,000.00 |
| | | | | |
| Total | | | 837.44 | $ 12,999,950.00 |



MOTION FOR USE OF
CASH COLLATERAL

-13-

BAILEY BUSEY

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

16-00900-FPC11     Doc 6     Filed 03/21/16     Entered 03/21/16 17:18:39     Pg 13 of 29

Gentry Appraisal
Dated: July 30, 2014

| Property | Property Owner | Parcel Number | Gross Acres | Rabo Valuation |
|---|---|---|---|---|
| Property 1 | U12B253, LLC | 190002000 | | |
| | Terra Management | 190004003 | | |
| | Del & Daneen | 190004004 | | |
| | Del & Daneen | 190004005 | | |
| | Terra Management | 190004006 | | |
| | U12B253, LLC | 190004007 | | |
| | Terra Management | 190004009 | | $ 1,980,000.00 |
| | | | | |
| Property 3A | U12B253, LLC | 191557000 | | $ 4,060,000.00 |
| | | | | |
| Property 3B | Wahluke Produce, Inc. | 400182023 | | |
| | Wahluke Produce, Inc. | 400182025 | | $ 2,240,000.00 |
| | | | | |
| Property 4 | Del & Daneen | 211480001 | | $ 50,000.00 |
| | | | | $ 8,330,000.00 |
| Less: Double Counting of Onion of portion of Onion Plant | | | | $ (1,800,000.00) |
| | | | | |
| Net Value | | | | $ 6,530,000.00 |

Gentry Appraisal
Dated: July 30, 2014

| Property | Property Owner | Parcel Number | Gross Acres | Rabo Valuation |
|---|---|---|---|---|
| Property 2 | Del & Daneen | 190164000 | | |
| | Del & Daneen | 190165001 | | |
| | Tatoes | 190165002 | | |
| | Del & Daneen | 190166000 | 185 | $ 2,220,000.00 |
| | | | | |
| Unappraised Acres | | | 49.9 | $ 598,800.00 |
| | | | | |
| Del & Daneen's Residence | Del & Daneen | | | $ 750,000.00 |
| | | | | |
| Property 5 | U12B253 | 211565000 | | $ - |
| | U12B253 | 211567000 | 120 | $ 1,440,000.00 |
| | | | | |
| Unappraised Acres | | | 36.1 | $ 433,200.00 |
| | | | 391 | $ 5,442,000.00 |



**MOTION FOR USE OF**
**CASH COLLATERAL**

-14-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

| Equipment | | | | |
|---|---|---|---|---|
| *Onion & Potato Packing* | | | | |
| Wahluke Produce | | | | $ 3,314,000.00 |
| Columbia Onion - Fresh | | | | $ 384,400.00 |
| Columbia Onion - Process | | | | $ 702,900.00 |
| *Farm Equipment* | | | | $ 1,000,000.00 |
| *Total Equipment* | | | | $ 5,401,300.00 |
| | | | | |
| Other Personal Property | | | | |
| Saddle Mountain Wireless | | | | $ 1,500,000.00 |
| 2015 Crops | | | | $ 7,000,000.00 |
| 2016 Crops | | | | $ 1,250,000.00 |
| *Total* | | | | $ 9,750,000.00 |
| | | | | |
| Total Collateral Value | | | | $ 40,123,250.00 |

3.5   Even at the values described above, which the Debtors believe are understated, it is evident that RAF is significantly over-secured.

## 4.   Motion to Use Cash Collateral.

4.1   The Debtors are in immediate need of the use of cash collateral in order to protect, preserve and liquidate the 2015 Crops as well as to grow and harvest the 2016 Crops.  Attached to the Declaration of Del Christensen as <u>Exhibit 2</u>, <u>Exhibit 3</u> and <u>Exhibit 4</u> are budgets detailing each Debtors' cash flow needs over the next ten (10) weeks (**"Emergency Budgets"**).   In addition, attached to the Declaration of Del Christensen as <u>Exhibit 5</u>, <u>Exhibit 6</u> and <u>Exhibit 7</u> are full 2016 budgets for each of the Debtors (**"2016 Budgets"**).



**MOTION FOR USE OF**
**CASH COLLATERAL**                    -15-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

The Debtors seek use of cash collateral in accordance with the attached Emergency and 2016 Budgets.

4.2     The expenses detailed in the Tatoes Emergency Budget (<u>Exhibit 2</u>) are primarily for 2016 farming operations.   The most critical amongst the Tatoes expenses are the lease payments, water, seed costs and labor.   As detailed in Mr. Christensen's Declaration, it is necessary to get the seed purchased and planted immediately in order to ensure maximum quality and yield of the 2016 crops.   At the same time Tatoes must begin irrigating the properties immediately which requires payment of water and irrigation charges.   The Debtors are also required to make the first lease payments on a number of real property leases.   A schedule of the amount which Tatoes is seeking to pay on each lease is detailed on an *Attachment A* to <u>Exhibit 2</u>.

4.3     Wahluke and Columbia's expenses (<u>Exhibit 3</u> and <u>Exhibit 4</u>) at this point in time are primarily in relation to liquidating the 2015 Crops. Wahluke and Columbia will begin incurring expenses with respect to packing and selling the 2016 Crops in August & September.

4.4     In addition to the other budgets provided, the Debtors have prepared a 2015 budget demonstrating how the Debtor believes the 2015 crop



**MOTION FOR USE OF**
**CASH COLLATERAL**                    -16-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

will liquidate (see Exhibit 8) and a projected budget showing how the 2016 Crops will be grown and liquidate (see Exhibit 9). In the budgets, the Debtors have attempted to detail their assumptions, including those regarding packouts, price and yield.

4.5 As indicated above, the Debtors employ a substantial number of employees both on a full time and seasonal basis. The majority of these employees are paid every two weeks. At the time of the filing of this case, there are a number of checks which have been distributed to employees but which have not yet been cashed. In addition, employees have put in work during the month of March for which they have not yet been paid. The Debtors are seeking Court approval by separate motion to honor payroll checks that were distributed prior to the filing of the case. The Debtors are also seeking authority to pay employees for work that was performed prior to the filing of the Bankruptcy petition but for which payment is not due in the ordinary course of the Debtors operations. These expenses are included in the Debtor's emergency cash collateral budgets and are collectively referred to as the **"Pre-Petition Wages."**



**MOTION FOR USE OF
CASH COLLATERAL**

-17-

BAILEY BB BUSEY

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

4.6　The Debtors routinely withhold from employees' paychecks withholding taxes, the employees' portion of the FICA and unemployment taxes and certain amounts which may be garnished or withheld from employees' paychecks pursuant to state law (collectively **"Pre-Petition Withholdings"**). In the ordinary course of its business, the Debtors forward the Pre-Petition Withholdings from their operating accounts to the appropriate third party agencies. Due to the commencement of this Bankruptcy, the Pre-Petition Withholdings were deducted from employees' paychecks but may not have been forwarded to the appropriate agencies. The Debtors believe that the Pre-Petition Withholdings constitute moneys held in trust and therefore are not property of the Bankruptcy Estate, however the Debtors seek as part of this motion to use cash collateral the ability to pay the Pre-Petition Withholdings in the ordinary course of its business operations.

4.7　As employers the Debtors have incurred tax obligations related to the Pre-Petition Wages, including the Debtors' share of FICA and Medicare taxes, unemployment insurance premiums, industrial insurance premiums and other related taxes **("Pre-Petition Taxes")**. The Debtors are current in the payment of their pre-petition tax obligations, however, they have incurred Pre-



**MOTION FOR USE OF**
**CASH COLLATERAL**　　　　-18-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

Petition Taxes for pre-petition periods which taxes are not yet payable in the ordinary course of business. The Debtors are seeking authorization to use cash collateral to pay the Pre-Petition Taxes in the ordinary course of business.

4.8    Wahluke and Columbia are also seeking authority to continue performance under the Marketing Contract with Eagle Eye until such time as the Debtors elect to assume or reject that Contract. Performance under the Marketing Contract will ensure that the Debtors are able to continue packing and selling the 2015 Crops.

4.9    The Debtors are seeking to continue their pre-petition employee benefits as well as to continue allowing the Debtor's employees to take advantage of employee benefits that were accrued prior to the filing of this case. The Debtors provide the following employee benefits: (a) The Debtors subsidize their employees' health care in the amount of $304.00/month. If an employee wants to add their spouse or family members, the employee must pay those premiums; (b) the Debtors have a Cafeteria Plan which allows employees to contribute to health, dental, vision and life insurance, although the Companies have no obligation to pay for any of those costs or premiums except health insurance, as described above; (c) the Debtors have established a



MOTION FOR USE OF
CASH COLLATERAL                        -19-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

401(k) program in which the Debtors have agreed to match an employees' contribution of up to 1% their gross annual salary. The Debtors have historically matched up to 3% of employee contributions but this amount was recently reduced to 1%; and (d) after working for the Companies for 1 year, a full time office or administrative employee is entitled to one (1) week of vacation. For each subsequent year the employee works for the Companies, they gain an additional day of vacation, up to a maximum of three (3) weeks. Vacation time may not be carried over from year to year. The benefits described herein are referred to as the **"Employee Benefits."**

4.10   The Debtors are proposing to continue the Employee Benefits and the Debtors' cost of continuing these Employee Benefits is included in Emergency and Cash Collateral Budgets.

4.11   The Debtors have moved to compel utility companies to continue providing utility service after the date of the service. In the event that any utility company or provider is granted a post-petition deposit as a condition of continuing to provide utility service, the Debtors seek authority through this cash collateral motion to pay such utility deposits.



411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

4.12   Pursuant to 11 U.S.C. §363, the Court may authorize the Debtors to use cash collateral for the purposes set forth in the Emergency Budget and the 2016 Budgets subject to providing adequate protection of the interests of RAF and the 2016 Lienholders (**"Cash Collateral Lenders"**).

4.13   Adequate protection is a flexible concept which is designed to ensure that a creditor's overall security position is not prejudiced as a result of the Debtor's use of cash collateral.   Adequate protection can be provided in a number of different ways.

4.13   In this case the Debtors believe RAF is adequately protected for several reasons:

4.13.1     First and foremost, the value of RAF's non-crop collateral provides a significant equity cushion to protect RAF against any losses incurred with respect to the 2016 Crops.

4.13.2     As shown on Exhibit 8, the Debtor believes that the net cash collateral existing (after payment of costs related to storage, packing and sale of the 2015 Crops) is approximately $3,522,000.  In addition, the Debtor has existing accounts receivable and cash of approximately $4,250,000 (**"Cash Collateral"**).   The Debtors propose to utilize the Cash Collateral as



**MOTION FOR USE OF
CASH COLLATERAL**

-21-

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

well as proceeds of the 2016 Crops in order to grow, harvest, store, pack and sell the 2016 Crops. The Debtor projects that as a result of its use of Cash Collateral the 2016 Crops will generate net proceeds (after paying all costs related to the growing and packing of the 2016 Crops – including return to the Debtors of the Cash Collateral) of $981,316.81. The Debtors' projections in this regard are detailed on the 2016 Budgets and summarized on <u>Exhibit 9</u>. In other words, if the Debtors' projections are correct, RAF's Cash Collateral position will improve with the farming of the 2016 Crops. The Debtors would propose to grant RAF a first position security interest and lien in the 2016 Crops as partial adequate protection.

4.13.3 The downside crop risk to RAF is limited by the federal crop insurance the Debtors have obtained. The insurance gives protection on both yield and the revenue side. The Debtors believe the crop insurance guarantee is approximately $8,500,000 as against a total farming budget of approximately $12,000,000, which substantially limits the exposure RAF has on the farming side of the business.

4.13.4 The Debtors are proposing, as partial adequate protection, to make quarterly interest only payments on the Cash Collateral



BAILEY BUSEY

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**MOTION FOR USE OF**
**CASH COLLATERAL** -22-

portion of RAF's loans at the non-default rate provided for in RAF's loan documents. The first interest payment would be due ninety (90) days following the entry of the final order authorizing the use of cash collateral.

4.13.5 The Debtors 2016 Budgets for which approval will be sought in a final order authorizing use of Cash Collateral provide for quarterly interest only payments at the non-default rate provided for in RAF's loan documents on the non-cash collateral portion of RAF's loans.[6] The Debtors intend to have proposed a bankruptcy plan prior to any funds being expended for the Debtor's 2017 Crops. Again the first quarterly interest payment would be due ninety (90) days following the entry of the final cash collateral order.

4.14 RAF is adequately protected by the value of its existing collateral, by the replacement lien in the 2016 Crops, by crop insurance and the periodic interest payments proposed on its loans.

4.15 With respect to the parties holding crop liens on the Debtors 2016 Crops, the Debtor's 2016 Budgets include repayment of those costs (lease

---

[6] In order to determine the balance of the non-cash collateral portion of RAF's loans, the Debtors would simply deduct the value of the Cash Collateral from the overall amount of RAF's debts. By way of example if the Cash Collateral is valued at $7,900,000 and RAF's total debt is $22,000,000, the non-cash collateral portion of the loan would be $14,100,000.00.



411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

16-00900-FPC11    Doc 6    Filed 03/21/16    Entered 03/21/16 17:18:39    Pg 23 of 29

payments and payments for chemicals/fertilizer). These lienholders will continue to hold their 2016 crop liens and will be adequately protected by those liens in conjunction with the payments that are provided for in the 2016 Budgets.

**5. Request for Relief:**

The Debtor's respectfully requests the Court:

5.1 Hold an emergency hearing at which time the Court considers and approves the Debtor's interim use of cash collateral pursuant to the Emergency Budgets.

5.2 Sets a final cash collateral hearing at which time the Court will consider the Debtor's request to use cash collateral pursuant to the 2016 Budgets.

5.3 Grant the Debtors such other and further relief as is equitable.

DATED this **21** day of March, 2016

ROGER W. BAILEY (WSBA 26121)
JOSHUA J. BUSEY (WSBA 34312)
Bailey & Busey PLLC
Counsel for the Debtors

BAILEY BB BUSEY
411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

1  Roger W. Bailey
2  Joshua J. Busey
3  BAILEY & BUSEY PLLC
   411 N. 2nd Street
4
   Yakima, Washington 98901
5

6  Phone:          509.248.4282
7  Facsimile:      509.575.5661
8  E-Mail:         roger.bailey.attorney@gmail.com
9

10 *Attorneys for Debtors*

---

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE:<br><br>TATOES, LLC<br>WAHLUKE PRODUCE, INC.<br>COLUMBIA MANUFACTURING,<br>INC., d/b/a/ COLUMBIA ONION,<br><br>       Debtors. | Case No.   16-00900<br>Case No.   16-00899<br>Case No.   16-00898<br><br>[PROPOSED]<br><br>**EMERGENCY ORDER<br>APPROVING USE OF CASH<br>COLLATERAL** |

This matter came before the Court on the motion of Wahluke Produce,

Inc., Tatoes, LLC and Columbia Manufacturing, Inc.'s (**"Debtors"**) motion

BAILEY **B**B **BUSEY**

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**ORDER AUTHORIZING EMERGENCY
USE OF CASH COLLATERAL**          **-1-**

for an order: (a) authorizing the Debtors to use cash collateral on an interim basis; and (b) setting a final hearing on the Debtor's motion to use cash collateral (**"Motion"**). The following appearances were made at the hearing: (a) Roger Bailey and Josh Busey for the Debtors; (b) _____ for Rabo AgriFinance; (c) Gary Dyer for the United States Trustee; and (d) _____. Having reviewed the pleadings filed with the Court and having heard the argument of counsel, the Court hereby finds and orders:

1.      The Motion has been coupled with a request to limit the time for notice and objections. Given the circumstances of this case the Court finds that it is appropriate to limit the time for objections and notice with respect to the Motion and consider the Motion on an emergency basis. The Debtor's Motion to Shorten Time is hereby granted.

2.      Notice of the motion was proper pursuant to FRBP 2002 and LBR 2002-1.

3.      The Motion is hereby granted.

4.      The Court hereby sets a final in-court hearing on Snokist's motion to use cash collateral for _____, 2016. The hearing shall



**ORDER AUTHORIZING EMERGENCY
USE OF CASH COLLATERAL**          **-2-**

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

be held at the United States Bankruptcy Court, _____ and shall commence at _____. The Court shall hold a pre-trial conference on _____, __, 2016 at _____ by telephone conference call. Parties may attend the pre-trial hearing by calling in to the Court's conference line (509.353._____).

5. Pending the conclusion of the final cash collateral hearing **("Interim Cash Collateral Period")**, the Debtors are authorized to use the proceeds from the sale of its inventory and other cash receipts, including those from accounts receivable **("Cash Collateral")** to pay the amounts described in the Emergency Budgets attached to the Motion.

6. During the Interim Cash Collateral Period, the Debtors shall provide to RAF, the U.S. Trustee, counsel for any unsecured creditors committee appointed by the U.S. Trustee and any other party requesting special notice, a weekly report **("Weekly Report")** describing: (a) the expenses paid by the Debtors during the preceding week on a cash basis; (b) a comparison of the actual expenses paid to the expenses estimated by the Emergency Budget for such period; (c) the balance of the 2015 Crops held by the Debtors at market value; and (d) the amount of the Debtors' outstanding



**ORDER AUTHORIZING EMERGENCY
USE OF CASH COLLATERAL**      **-3-**

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

accounts receivable.  The Weekly Report shall be provided to correspond with the time periods described in the Emergency Budget.  The first weekly report shall be due by the close of business on Wednesday following the end of the first weekly period described in the Emergency Budget, with subsequent reports due on each subsequent Wednesday until the conclusion of the final cash collateral hearing.

7.    The Debtors, with the consent of Rabo AgriFinance (**"RAF"**) may use Cash Collateral in excess of the amounts described in the Emergency Budget so long as such amounts are used for paying expenses incurred in the Debtors' ordinary course of business.

**[Intentionally Left Blank]**

**BAILEY BB BUSEY**

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**ORDER AUTHORIZING EMERGENCY
USE OF CASH COLLATERAL**        -4-

8.  Any party with a security interest or lien in the pre-petition assets of the Debtors or the Cash Collateral shall retain said security interests or liens in the same priority and to the same extent in said assets and Cash Collateral or in any proceeds of such assets or Cash Collateral subject only to the Debtors' ability to use the Cash Collateral as provided herein.

Presented By:

_____
ROGER W. BAILEY (WSBA 26121)
JOSHUA J. BUSEY (WSBA 34312)
Bailey & Busey PLLC
Counsel for Debtors

**BAILEY B BUSEY**

411 North 2nd St.
Yakima, Washington, 98901
(509) 248-4282

**ORDER AUTHORIZING EMERGENCY**
**USE OF CASH COLLATERAL**          -5-