Bruce K. Medeiros
DAVIDSON BACKMAN MEDEIROS PLLC
1550 Bank of America Financial Center
601 West Riverside Avenue
Spokane, Washington 99201
(509) 624-4600
Email: bmedeiros@dbm-law.net

Michael R. Johnson (*Pro Hac Vice Pending*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com

Attorneys for Rabo AgriFinance, Inc.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br>**COLUMBIA MANUFACTURING, INC.,**<br>**dba COLUMBIA ONION,**<br>Debtor. | Case No. **16-00898**<br>Case No. **16-00899**<br>Case No. **16-00900**<br>Chapter **11** |
| In re:<br>**WAHLUKE PRODUCE, INC.,**<br>Debtor. | **RABO AGRIFINANCE, INC.'S INITIAL RESPONSE AND OBJECTION TO THE DEBTORS' MOTION FOR INTERIM AND FINAL USE OF CASH COLLATERAL** |
| In re:<br>**TATOES, LLC,**<br>Debtor. | |

Rabo AgriFinance, Inc. ("RAF"), which is the primary secured lender to the Debtors' in the above-entitled Chapter 11 cases, through counsel, hereby files this Initial Response and Objection to the Debtors' *Motion for an Order: (A) Authorizing Emergency & Interim Use of Cash Collateral; (B) Authorizing Final Use*

Page 1
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 1 of 15

*of Cash Collateral* (the "Cash Collateral Motion")(Docket #6), filed March 21, 2016. In support of this Initial Response to the Cash Collateral Motion, RAF states as follows:

1. In the Cash Collateral Motion, the Debtor raises a number of issues and requests far-ranging relief that the Court should not consider at the preliminary hearing on the Cash Collateral Motion. Instead, the Court should limit its inquiry to the cash collateral use that is absolutely necessary pending a final hearing on the Cash Collateral Motion, after giving RAF and other parties in interest a reasonable period of time to investigate the Debtors' budgets and general financial affairs, and file a more detailed response to the Cash Collateral Motion.

2. In this regard, RAF obviously recognizes that the Debtors have a relatively urgent need to use certain amounts of cash collateral to pay for such things as employees, utilities and inputs and other expenses associated with the 2016 Crop. On the other hand, if RAF understands the Cash Collateral Motion, the Debtors are asking this Court to approve at the interim hearing, and on essentially one day of notice, the continued use of cash collateral through Friday, May 27, 2016, or for ten more weeks, as outlined in the "Emergency Budgets" attached as Exhibits 2, 3 and 4 to the Declaration of Del Christensen in Support of Motion for Use of Cash Collateral and First Day Motions ("Christensen Decl.")(Docket #7).

Page 2
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 2 of 15

3. That request is unreasonable and unauthorized, and it should not be approved. Federal Rule of Bankruptcy Procedure 4001(b)(2) provides that, at a preliminary hearing requesting the use of cash collateral, "the court may authorize the use of <u>only that amount</u> of cash collateral as is necessary to avoid the immediate and irreparable harm to the estate pending a final hearing." (Emphasis supplied). RAF assumes that the Court will be able to schedule a final hearing on the Cash Collateral Motion within the next thirty days. Further, RAF notes that the nature of farming is inherently risky, and that RAF's personal property cash collateral is highly volatile (cash, accounts receivable and inventory). As a result, RAF's collateral position in these cases is going to change on a daily basis, and perhaps for the worse. If things go poorly for these Debtors then RAF's collateral position could be materially and prejudicially eroded. It would not be appropriate to allow the Debtors interim cash collateral authority through the end of May given these facts.

4. In short, the Debtors are requesting that this Court, at the preliminary hearing, authorize a lengthy use of cash collateral that would dictate not only the outcome of the final hearing on cash collateral but perhaps the ultimate outcome of these cases. The Court should refuse to do that. Instead, it should limit the Debtor's use of cash collateral to the line-item expenses outlined in the weekly budgets attached as Exhibits 2, 3 and 4 to the Christensen Decl. for the periods ending March 25, 2016 (post-petition period only), April 1, 2016, April

Page 3
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 3 of 15

8, 2016, April 15, 2016 and April 22, 2016 only.[1] Further, the Court should schedule a final hearing on the Cash Collateral Motion on or shortly before April 22, 2016, and it should further hold that the Debtors' authority to use cash collateral on an interim basis shall cease on the earlier to occur of (a) April 22, 2016, at 11:59 a.m., or (b) the conclusion of the final hearing on the Cash Collateral Motion.

5. Second, because only expenses that are "necessary to avoid immediate and irreparable harm" may be authorized at an interim hearing on cash collateral, RAF believes that, while the Court should generally authorize the use of cash collateral through April 22, 2016 or the conclusion of the final hearing (whichever occurs first), the Court should <u>not authorize</u> the Debtors to use or expend funds pending the final hearing on the following items:

    a. <u>Tatoes Emergency Budget (Exhibit 2)</u>.

        i. Professional Fees-Tatoes has budgeted $443.59 each week for professional fees. There is no explanation or detail regarding this expense. There have been no orders entered authorizing the payment of retainers for professionals, no orders entered authorizing the employment of professionals and

---

[1] Because RAF does not know the specific expenses making up the line items in the proposed "Emergency Budgets" (e.g., RAF does not know which employees and principals, if any, will be paid under the "wages" line item), RAF does not concede that all of the budgeted amounts through April 22, 2016 are indeed amounts which must be expended to avoid immediate and irreparable harm. RAF reserves the right to challenge any and all proposed expenses at the final hearing on the Cash Collateral Motion.

Page 4
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 4 of 15

there have been no professional fees allowed. Payments from this line item should not be authorized pending the final hearing on the Cash Collateral Motion.

ii. Rent Property-Tatoes has budgeted $967,235.00 for "rent property" during the week ending April 1, 2016. RAF assumes that these expenses would be for land rental for the 2016 crops. However, that is unclear from a review of the budget. While some of these expenses may be appropriate uses of cash collateral, it is a large amount, and deserves further investigation. Payments from this line item should not be authorized pending the final hearing on the Cash Collateral Motion unless, prior to that time, the Debtors can provide further detail of these expenses including showing that the expenses are due, at which time RAF could then authorize the expenditures in advance of the final hearing. Indeed, RAF's preliminary investigation has raised the following questions regarding these expenses:

1. The expenses appear to include $34,000.00 in payments on or before April 1 to "Leland" under a pre-petition lease under which the payment was due on March 15, 2016 [see Docket #7, pg. 36], or prior to the Petition Date. The Debtors should not be paying pre-petition lease obligations unless and until the Debtors, after appropriate notice and hearing, are authorized to assume the subject lease;

2. The expenses appear to include $8,325.00 in payments on or before April 1 to "Stayner" under a pre-petition lease under which the

Page 5
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 5 of 15

payment was due on March 15, 2016 [Docket #7, pg. 36], or prior to the Petition Date.  The Debtors should not be paying pre-petition lease obligations unless and until the Debtors, after appropriate notice and hearing, are authorized to assume the subject lease;

        3.      The expenses appear to include $42,000.00 in payments on or before April 1 to "Neil C."  [Docket #7, pg. 36]  Neil C is believed to be Neil Christensen, who is believed to be related to Del Christensen.  No payments should be authorized to "Neil C" until his relationship with the Debtors and the basis for such payments are further investigated;

        4.      The expenses appear to include $21,000.00 in payments on or before April 1 to "Ryan C."  [Docket #7, pg. 36]  Ryan C is believed to be Ryan Christensen, who is believed to be related to Del Christensen.  No payments should be authorized to "Ryan C" until his relationship with the Debtors and the basis for the payments are further investigated;

        5.      The expenses appear to include $40,000.00 in payments on or before April 1 to "DAC."  [Docket #7, pg. 37]  DAC is believed to be DAC Properties, LLC, an affiliate of the Debtors, and also a collateral grantor of some of the collateral securing the Debtors' loans from RAF.  No payments should be authorized to DAC as part of interim use of cash collateral and, instead, the Court should consider whether payments to DAC are warranted as part of the final hearing;

Page 6
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 6 of 15

6.  The expenses appear to include $16,000.00 in payments on or before April 1 to "Bob Christensen." [Docket #7, pg. 37] Bob Christensen is believed to be related to Del Christensen. No payments should be authorized to "Bob Christensen" until his relationship with the Debtors and the basis for the payments are further investigated;

7.  The expenses appear to include $26,000.00 in payments on or before April 1 to "U12B253, LLC." [Docket #7, pg. 37] U12B253, LLC is an affiliate of the Debtors, and also a co-obligor on the Debtors' loans from RAF. No payments should be authorized to U12B253, LLC as part of interim use of cash collateral and, instead, the Court should consider whether payments to this entity are warranted as part of the final hearing;

8.  There are several affiliated companies that are housed in the same facility as the Debtors, including Saddle Mountain Wireless, U12B253, EZ Fixings Foods and EZ Fixings. There is no discussion in the Cash Collateral Motion or in the budgets about whether any of these companies are contributing to the payment of rent or other expenses. That disclosure should be made prior to authorizing the Debtors to pay rent for their facilities; and

9.  The Payment Schedule [Docket #7, pg. 38] indicates that only $717,760.00 in payments are due by April 1 on Tatoes' leases (including some of the objectionable payments identified above), and yet the Tatoes' budget [Docket #7, pg. 34] indicates the amount is $967,235.00. No explanation is given

Page 7
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 7 of 15

for this discrepancy.

      iii.    Storage Costs and Related Overhead and Transportation-The Christensen Decl states that "the expenses that are required in the very near term are significant and primarily represent costs associated with: (a) preparing the land for planting; (b) making lease payments; (c) acquiring potato and onion seed; (d) planting crops; (e) paying for irrigation water; and (g) labor associated with the foregoing." [Docket #7, pg. 10, ¶20]. On the Tatoes Emergency Budget (Exhibit 2) [Docket #7, pg. 34], however, Tatoes identifies a number of expenses starting with "Storage Costs (est.) 2015 Crop," and below that a number of overhead charges for wages, taxes, research and maintenance, along with "Corp Cost" and "Transportation 2015 Crop," and ending with a weekly line item amount of $48,529.96 for "Overhead (based on %)." There is no explanation or detail for any of these expenses in the pleadings RAF has reviewed, nor does it appear from the Christensen Decl. that these are truly emergency expenses that must be authorized prior to the final hearing on the Cash Collateral Motion since they do not relate to preparing and planting of the 2016 Crops. Further, as noted above, many non-debtor affiliates share facilities with the Debtors, yet there is no discussion about whether these overhead expenses are solely related to Tatoes' operations, or if instead they are for both Tatoes and other affiliates. In short, these proposed expenses deserve further investigation, and payments from any of these line items (starting with "Storage Costs (est.) 2015 Crop" and ending with

Page 8
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11   Doc 32   Filed 03/24/16   Entered 03/24/16 08:45:18   Pg 8 of 15

"Overhead (based on %)" should not be authorized pending the final hearing on the Cash Collateral Motion.

    b.    <u>Wahluke Produce Emergency Budget (Exhibit 3)</u>.

        i.    Professional Fees-Wahluke Produce has budgeted $10,000.00 per week for the first two weeks and then $16,250.00 per week thereafter for professional fees. [Docket #7, pg. 40] There is no explanation or detail regarding this expense. There have been no orders entered authorizing the payment of retainers for professionals, no orders entered authorizing the employment of professionals and there have been no professional fees allowed. Payments from this line item should not be authorized pending the final hearing on the Cash Collateral Motion.

    c.    <u>Columbia Onion Emergency Budget (Exhibit 4)</u>.

        i.    Professional Fees-Columbia Onion has budgeted $2,700.00 on April 1, 2016 and $5,400.00 on April 29, 2016 for professional fees. [Docket #7, pg. 42] There is no explanation or detail regarding these expenses. There have been no orders entered authorizing the payment of retainers for professionals, no orders entered authorizing the employment of professionals and there have been no professional fees allowed. Payments from this line item should not be authorized pending the final hearing on the Cash Collateral Motion.

        ii.    Rent—Columbia Onion also has budgeted $5,000.00 for the payment of rents on April 1, 2016, and another $52,000.00 for rents on April 29,

Page 9
Rabo's Initial Response to the Debtors' Motion for Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 9 of 15

2016. [Docket #7, pg. 42] Yet the Christensen Decl. states that the "Wahluke and Columbia budgets represent the costs of packing the 2015 crops." No explanation has been given about why Columbia Onion would be paying rent if its business consists of packing the 2015 crops. Who does it pay rent to? Payment from this line item should not be authorized pending a final hearing on the Cash Collateral Motion.

6. Third, in addition to reducing the period of interim cash collateral use and not authorizing the particular line item expenses noted above at the interim hearing, the Court also should make some additional rulings at the preliminary hearing and include such rulings in any interim order to protect RAF and provide RAF with the adequate protection it is entitled to under the Bankruptcy Code. *See, e.g., In re Stein,* 19 B.R. 458 (Bankr. E.D. Pa. 1982) (a court's authority to grant use of cash collateral carries with it concomitant responsibility to insure that value of creditor's security is not impaired and court may do this by using non-exclusive terms set forth in 11 U.S.C. § 361).

7. In this regard, RAF agrees with the Debtor that RAF should be granted "first position security interest and lien in the 2016 Crops as partial adequate protection." The proposed *Emergency Order Approving Use of Cash Collateral* (the "Proposed Interim Order"), however, does not provide for that relief. In fact, the Proposed Interim Order does not appear to grant RAF a replacement lien at all. Paragraph 8 of the Proposed Interim Order simply states that "[a]ny

Page 10
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 10 of 15

party with a security interest or lien in the pre-petition assets of the Debtors or the Cash Collateral shall retain said security interests or liens in the same priority and to the same extent in said assets and Cash Collateral or in any proceeds of such assets or Cash Collateral subject only to the Debtors' ability to use the Cash Collateral as provided herein." This language does nothing other than say that, if a creditor such as RAF has a lien on pre-petition assets and cash collateral (and the Debtors say that RAF is the only secured creditor who has such an interest), then the creditor shall continue to have its lien in the same property and with the same priority, except that the Debtors get to use cash collateral as authorized by the Court. In short, the Proposed Interim Order does not grant RAF the first priority post-petition replacement lien on the 2016 Crops that the Debtors promised to grant, and the Court should not authorize any use of cash collateral, even on an interim basis, without also giving RAF this protection. Further, the post-petition replacement lien granted to RAF should be deemed continuing and perfected for all purposes by operation of law as of the Petition Date, without further action by RAF or any requirement that RAF file or record any documents to perfect its interest in this property, and should not be subject to the liquidation of all of RAF's other collateral as requested by the United States Trustee in the objections it filed to the Debtors' Cash Collateral Motion.

8. Further, in addition to the replacement lien which the Debtors say

Page 11
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 11 of 15

they will grant to RAF but which the Proposed Interim Order does not grant, the Debtors also propose, in paragraph 6 of the Proposed Interim Order, to give RAF and certain other parties in interest certain reports. RAF agrees that these reports should be provided, both during the interim cash collateral period and during any continued period thereafter while the Debtors continue to use RAF's cash collateral. Under the language as drafted, however, the Debtors would not have to provide weekly reporting until the close of business on the Wednesday following the preceding Friday, and the report would be for the week ending on the preceding Friday. The Debtors do not need five days to provide these reports. They should be due at noon Pacific Time on the Tuesday following the preceding Friday ending the cash collateral period. Further, the Proposed Interim Order and any Order authorizing the use of cash collateral on a final basis should make clear that the weekly reports shall be provided <u>by email delivery</u> to both RAF and RAF's counsel at the following email address (or at such other email addresses as RAF may subsequently request): (a) wayne.graffis@raboag.com; (b) justin.linderman@raboago.com; (c) mjohnson@rqn.com; and (d) dmonson@rqn.com. Further, in addition to the reports identified by the Debtors, RAF requests that, during the interim cash collateral period, the Debtors also be ordered to provide RAF with the following additional reports:

    a. A beginning and ending cash balance for each of the Debtors, for each reporting period (i.e., the first cash balance report would report on the cash

Page 12
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 12 of 15

balance beginning as of the Petition Date and ending on March 25, 2016, the second cash balance report would report on the cash balance beginning as of March 26, 2016 and ending on April 1, 2016, and so forth);

      b.    The weekly accounts receivable reports to be provided should include an aging report (current, 30 days, 60 days, etc.) for each vendor; and

      c.    The Debtors also should be required to provide weekly accounts payable reports which also include aging for each of the payables by vendor.

      9.    The Court's Interim Order authorizing the Debtors' use of cash collateral also should require the Debtors to fully cooperate with RAF in an AFCID inspection of RAF's personal property collateral, with RAF to pay its own costs concerning such inspection and with the inspection to be conducted by no later than three (3) business days prior to the final hearing on the Cash Collateral Motion.

      10.    Finally, the Court's Interim Order authorizing the Debtors' use of cash collateral should require the Debtors to provide RAF with proof of adequate insurance coverage for RAF's collateral and the Debtor's operations by no later than Monday, March 28, 2016, at 5:00 p.m.[2]

---

[2] The Debtor also proposes to make "quarterly interest only payments on the Cash Collateral portion of RAF's loans at the non-default rate provided for in RAF's loan documents. The first interest payment would be due ninety (90) days following the entry of the final order authorizing the use of cash collateral." RAF will address these proposed payments when it files its Final Response and Objection to the Cash Collateral Motion in advance of the final hearing.

Page 13
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

WHEREFORE, for the reasons set forth herein, RAF respectfully requests that the Court only grant the Debtors' Cash Collateral Motion on an interim basis pending a final hearing, and only to the extent requested herein. RAF also respectfully requests that any Interim Order authorizing the use of cash collateral contain the protections and limitations set forth above. RAF also respectfully requests that the Court schedule a final hearing on the Cash Collateral Motion for a date and time to be determined by the Court on or before April 22, 2016. RAF also respectfully requests that the Court's Order expressly provide as follows: "Nothing in this Order shall prevent or prejudice RAF or any other party in interest from requesting the Court, on an emergency basis, to terminate the use of Cash Collateral prior to the final hearing on the Cash Collateral Motion, or from seeking any other relief including, without limitation, stay relief or dismissal or conversion of this case or appointment of an Examiner or Chapter 11 Trustee."

Finally, RAF reserves all of its rights with respect to the Debtors' request for use of cash collateral and any final hearing on the Cash Collateral Motion, and it further reserves its right under Section 507(b) of the Bankruptcy Code to seek a super-priority administrative expense claim in these cases in the event that any adequate protection ordered by the Court turns out to be insufficient to protect RAF's interests.

/ / /

/ / /

Page 14
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 14 of 15

DATED this 24th day of March 2016.

       DAVIDSON BACKMAN MEDEIROS PLLC

       */s/ Bruce K. Medeiros*
       Bruce K. Medeiros, WSBA No. 16380

          - and -

       RAY QUINNEY & NEBEKER, P.C.

       Michael R. Johnson, Utah Bar No. 7070
       Douglas M. Monson, Utah Bar No. 2293
       (*Pro Hac Vice Pending*)

       *Attorneys for Rabo AgriFinance, Inc.*

Page 15
Rabo's Initial Response to the Debtors' Motion for
Interim and Final Use of Cash Collateral
Rabo\Pleadings.sa

DAVIDSON BACKMAN MEDEIROS
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

1550 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201
FACSIMILE: (509) 623-1660
(509) 624-4600

16-00900-FPC11    Doc 32    Filed 03/24/16    Entered 03/24/16 08:45:18    Pg 15 of 15